UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**LUCY BONSANTO,**
    **Plaintiff,**

-v-                                           **CASE NO. 2:09-cv-366-FtM-DNF**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant.**
_____/

**OPINION AND ORDER**[1]

Plaintiff filed an application for a period of disability and disability insurance benefits [DIB] and Supplemental Security Income [SSI] on February 15, 2006, alleging an onset of disability of January 1, 2002 (Tr. 20, 798). Plaintiff has acquired sufficient quarters of coverage to remain insured through June 30, 2004. The Agency denied this application in initial and reconsideration determinations (Tr. 22-24, 42-44, 50-52-, 736-43). Plaintiff timely requested and appeared at a hearing on October 16, 2007 before Administrative Law Judge (ALJ) Steven D. Slahta (Tr. 21). In a hearing decision dated February 23, 2008, the ALJ found Plaintiff not disabled (Tr. 16). The ALJ's hearing decision rested as the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review, on April 24, 2009. [Tr. 3-5]. The ALJ's final hearing decision is now ripe for review under sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383 (c)(3).

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference signed by Judge Richard A. Lazzara dated September 1, 2009. (Doc. 16).

The Commissioner has filed two transcripts of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal their memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

### I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION AND STANDARD OF REVIEW

Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The decision of Administrative Law Judge Steven D. Slahta, dated December 10, 2007, found Plaintiff was not under a disability as defined in the Social Security Act, at any time from January 1, 2002, (alleged onset date), through June 30, 2004 (date last insured "DLI") 20 C.F.R. 404.1520(g). (Tr. 13).

At Step 1 the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2002, through her date last insured of June 30, 2004. (Tr. 13). At Step 2 the ALJ found Plaintiff suffered from severe impairments of fibromyalgia, colitis, irritable bowel syndrome, obesity, and depressive disorder (Tr. 13). At Step 3 the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 15). At Step 4 the ALJ determined Plaintiff has the residual functional capacity to perform a wide range of sedentary work with a sit/stand option (Tr. 166). At Step 5 the ALJ found Plaintiff (through June 30, 2004), was unable to perform any of her past relevant work as a cook, culinary manager, teacher, and retail salesperson (Tr. 20).

In reviewing a decision by the Commissioner, the District Court is bound to uphold the Commissioner's findings if they are supported by substantial evidence and based upon proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). Factual findings are conclusive if supported by "substantial evidence," which is more than a scintilla and consists of such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Lewis v. Callahan*, 125 F.3d at 1440. The Court does not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). If the Commissioner's decision is supported by substantial evidence, the Court must affirm even if the evidence predominates against the decision. *Wilson v. Barnhart*, 284 F.3d at 1291. However, the Court must conduct an exacting examination of whether the Commissioner followed the appropriate legal standards in deciding the claim and reached the correct legal conclusions. *Wilson v. Barnhart*, 284 F.3d at 1291. The failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted will mandate reversal. *Keeton v. Department of Health and Human Servs.*, 21 F.3d at 1066.

## II. Review of Facts and Conclusions of Law

A.     **Background Facts:**

Plaintiff was born on July 18, 1968 (Tr. 24), and was thirty-nine years old at the time of the February 28, 2008, hearing decision (Pl. Br. Pg. 2). Plaintiff reported she has a high school education, two years of college (Tr. 20, 798) and has worked in the past as a cook, culinary manager, teacher, and retail salesperson (Tr. 120, 176-82, 798-801). Plaintiff reports her disability began January 1, 2002, due to fibromyalgia, colitis, irritable bowel syndrome, obesity, and depressive disorder (Tr. 119, 804-07). After review of the medical evidence and testimony at the hearing from Plaintiff, the ALJ found Plaintiff not disabled. (Tr. 11-21).

The ALJ found Plaintiff had the residual functional capacity (RFC) for a wide range of sedentary work with a sit/stand option (Tr. 16 Finding 5). The ALJ found that Plaintiff could occasionally climb, balance, kneel, stoop, crouch, and crawl and precluded exposure to hazards (Tr. 16 Finding 5). The ALJ limited Plaintiff to unskilled, low stress work defined as one to two step tasks, routine repetitive tasks, working primarily with things rather than people, and entry level positions (Tr. 16 Finding 5). Plaintiff could not return to her past relevant work (Tr. 20 Finding 6). Relying on the testimony of a vocational expert (VE) and the Medical Vocational Guidelines (Grids) as a framework for decision making, the ALJ found that other work existed in significant numbers in the national economy that Plaintiff could perform (Tr. 20-21 Finding 10). The ALJ found Plaintiff not disabled (Tr. 21 Finding 11).

Plaintiff has an extensive history of gastric conditions, including irritable bowel syndrome, and reflux disease. On March 9, 2003, Plaintiff was diagnosed with probable acute cholecystitis, reflux disease, and irritable bowel syndrome ("IBS"). (Tr. 451-457). Plaintiff underwent surgery several days later and was diagnosed with acute calculous cholecystitis (Tr. 524). Plaintiff continued to receive treatment through October 2004 with Dr. Andrew Conn. (Tr. 448-450, 525-530). On October 19, 2004, Plaintiff presented with abdominal cramping and frequent diarrhea (Tr. 449). On October 27, 2004, Dr. Conn performed a colonoscopy (Tr. 525-530). Dr. Conn's notes post-op reveal "colon polyp, normal colon, probable irritable bowel syndrome ("IBS"). (Tr. 530).

Plaintiff's abdominal pain continued to be problematic, resulting in an additional emergency room visit on August 18, 2005, (past " DLI" of June 30, 2004) where Plaintiff was treated by Dr. A. Lafferty. (Tr. 474-476). Plaintiff was diagnosed with abdominal pain, vomiting and diarrhea with possible colitis. Plaintiff received normal saline, Levaquin, Flagyl, Phenergan and Dilaudid and was given an out-patient prescription of Flagyl, Leavquin, Phenergan and Vicodin. Dr. Lafferty's report further stated that Plaintiff's "[c]omplete blood count is within normal limits. Serum electrolytes were within normal limits with the exception of the glucose being 100. Liver function tests and lipase within normal limits. Urine pregnancy test negative. Urinalysis is normal". (Tr. 474-476)

Through September 2005, Plaintiff was treated by Dr. Asif H. Choudhury (Tr. 720-727). Plaintiff was diagnosed with abdominal pain and referred for further testing. On September 6, 2005, Dr. Choudhury performed an esophagogastroduodenoscopy with biopsy and colonoscopy (Tr. 724-727). Plaintiff's post-operative diagnosis was gastritis.

As of September 19, 2005, Plaintiff reported biliary type diarrhea. On September 21, 2005, Dr. Choudhury performed the following procedures: endoscopic retrograde, cholangiopancreatography with sphincterotomy. Dr. Choudhury post-operative diagnoses reflects: "[B]iliary dysfunction with Sphincter of Oddi Dysfunction, status post sphincterotomy was done and balloon sweeping was done without any evidence of any stone." (Tr. 722). "[A]SSESSMENT: Most likely biliary Dysfunction with Sphincter of Oddi Dysfunction causing the problem, status post sphincterotomy was done" (Tr. 722-723).

Plaintiff was examined and treated by Jack Clark, DO, on March 8, 2006 for abdominal pain (Tr. 420-426). Plaintiff reported that "everything hurts" (Tr. 420-422). Plaintiff also reported being in pain for the past five years and having ongoing digestive symptoms with abdominal distress. She reported migraine headaches, anxiety, colitis, "IBS", muscle and bone pain and numbness in her legs and the corners of her mouth. Dr. Clark's examination also revealed Plaintiff was morbidly obese and looked depressed. Plaintiff had trigger points in the trapezius area, gluteal locations, trochanteric bursa, left elbow and low cervical area. Dr. Clark diagnosed "[f]ibromyalgia as part of effective spectrum disorder with migraine headache, chronic abdominal and pelvic pain, depression and anxiety" (Tr. 322). Plaintiff returned to Dr. Clark in October 2007 with complaints of widespread pain. Dr. Clark noted that he had not seen Plaintiff in over a year. Examination revealed myofascial trigger point tenderness and allodynia. However, Plaintiff's motor strength was intact (Tr. 458-460).

State Agency Physician Ronald Kline reviewed Plaintiff's medical records in May 2006, and found that she could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds (Tr. 317). Dr. Kline found that Plaintiff could sit, stand and/or walk for six of eight hours (Tr. 317). Dr. Kline found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. Specifically, Dr. Kline found Plaintiff to be:

> "[m]orbidly obese with HX IBS and alleging diffuse pains consistent with fibromyalgia. Recent Cellulitis right foot and talar fx, now healed. 69" 284 lbs BP 112/70. Recent Exams show multiple tender trigger points but are otherwise normal" (Tr. 317).

State Agency Physician, Timothy Foster, Ph.D. psychologist, reviewed Plaintiff's medical records on May 16, 2006, and determined Plaintiff to be mildly restricted in activities of daily living; mildly restricted in maintaining social functioning, moderately restricted in maintaining concentration, persistence or pace, with no episodes of decompensation (Tr. 572). Dr. Foster's notes state:

> "[T]his is a 37 yr old female at initial alleging fibromyalgia, insomnia as well as alleging depression. There is no hx of psych treatment. Cl was sent to examining Dr. Zsigmond for current psych interview and MSE. Dr. Zsigmond gives only the dx of Adjustment disorder to this applicant. I am not finding severe functional limits from mental at this time" (Tr. 574).

State Agency Physician, Dr. Laura Browning reviewed Plaintiff's medical records in November 2006 and also found that she could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. Dr. Browning found Plaintiff could sit, stand and/or walk for six of eight hours (Tr. 555) and found no postural limitations (Tr. 556). Dr. Browning's notes state:

> "... In 9/05 all tests, including EGD, colonoscopy, CAT scan of the abdomen and pelvis, were negative. She has had cholescystesctomy in the past. She underwent a total abdominal hysterectomy in 10/05 secondary to pelvic pain, fibroids and ovarian cysts. 3/06 follow-up showed no complaints and the pelvic exam was negative. In 3/06 she also underwent a full physical exam for possible Fibromyalgia - at that time she weighed 289 lbs., her lungs were clear, there was "FROM" [full range of motion] of all joints - the remainder of the exam was also unremarkable (Tr. 555).

Dr. Nancy Dinwoodie, reviewed Plaintiff's medical records on November 16, 2006 and

completed the Psychiatric Review Technique Forms ("PRTF"). Plaintiff was noted to be mildly restricted in activities of daily living; mildly restricted in maintaining social functioning, moderately restricted in maintaining concentration, persistence or pace, with no episodes of decompensation (Tr. 294). Dr. Dinwoodie notes state:

> "[C]l is a 38 year old female alleging disability to chronic pain and anxiety. Cl was in Ruth Cooper CSU 08-06 got 1 day. Cl learned that her husband was with another woman. Cl OD'ed and was hospitalized. Cl had labile mood and was very attention seeking. DX Adjustment Disorder and Cocaine and Benzodazepine abuse. MER revealed that she had questionable credibility. Cl has had a recent life crisis in regard to her husband. Cl related that she tried to take her life, but she denied suicidal intent in the hospital. This goes along with the statement that she was needy and attention seeking (Tr. 296)".

On January 3, 2008, Plaintiff was examined by Claudia Zsigmond, Psy.D. (Dr. Zsigmond completed a General Clinical Evaluation with Mental Status, Memory Test Assessment and Completion of Mental Functional Capacity Form provided by the Office of Disability Determinations) (Tr. 225-228). Plaintiff reported to Dr. Zsigmond that in August of 2006 she was psychiatrically hospitalized following an overdose on prescription medications and Cocaine. Plaintiff was placed under the Baker Act for approximately one week until she mentally stabilized. Since then Plaintiff has been treated on an out-patient basis and receives pastoral counseling. Dr. Zsigmond noted:

> "[H]er prognosis is poor due to her poorly managed mental illness and limited coping skills. On the AMS-III she obtained an immediate Memory score of 69 and General Memory score of 66 placing her in the Extremely Low range of memory functioning. However, her poorly managed mental illness and poor concentration impaired her performance" (Tr. 228).

"[R]ECOMMENDATION: "[O]btain health Insurance and continue appropriate medical care, including a neurological consultation given her report of recent "mini-stroke". She would also benefit from individual counseling to address depression and enhance her coping skills" (Tr. 228).

Plaintiff was seen by Stanley Rabinowitz, M.D., S.C. on December 22, 2007 at the request of the Office of Disability Determinations. Plaintiff's chief complaint was that she was suffering from fibromyalgia. Dr. Rabinowitz found Plaintiff to be morbidly obese and noted she complained of "[p]ain with any range of motion testing or orthopedic maneuver." "[I] indicated to her how difficult it would be to do an adequate examination if she couldn't try to do things on her own. She had great difficulty doing this, and finally consented to trying to do an appropriate examination. Significant symptom magnification and embellishment were evident." IMPRESSIONS: "Chronic fibromyalgia with multiple somatic complaints; history of chronic depression, history of irritable bowel syndrome and right upper extremity pain, etiology undermined."  (Tr. 325-236).

**B.  SPECIFIC ISSUES**

   **I.  DID COMMISSIONER FAIL TO ARTICULATE REASONS FOR ONLY CREDITING TREATING AND CONSULTATIVE OPINIONS AND DISCREDITING THE OPINIONS OF OTHER MEDICAL SOURCES.**

Plaintiff contends the ALJ failed to adequately explain the basis for selectively crediting or discrediting multiple opinions from multiple medical sources. Plaintiff also contends that the rationale for discrediting these opinions centers mostly on the alleged lack of "objective" evidence, despite the continuous findings of trigger points and Plaintiff's

diagnosis of severe fibromyalgia.

In June 2006, Dr. Asif Choudbury's opinion was Plaintiff was unable to work due to a fibromyalgia attack. The ALJ gave little weight to this opinion as the examination showed only diffuse abdominal tenderness. Dr. Choudbury noted that Plaintiff's gastro-intestinal symptoms worsened when her fibromyalgia worsened. However, the record shows that gastrointestinal work-ups were repeatedly within normal limits with little objective evidence to explain Plaintiff's symptoms. Further, Dr. Choudhury noted that "[P]laintiff's rheumatologist should decide whether or not Plaintiff needs disability due to fibomyalgia", indicating he was unsure about his opinion.[2] The ALJ properly found that Dr. Choudhury's limitations were inconsistent with the evidence of record. (Tr. 19).

Dr. Clark notes show that April 2006 through August 2006, Plaintiff showed positive fibomyalgia trigger points. However, he also noted that there were no deformities or synovitis over the joints, Plaintiff joints had full range of motion. Further, he noted that Plaintiff's motor strength was intact throughout and there was equal and symmetric deep tendon

---

[2] Rheumatologists may be better qualified to determine the effects of fibromyalgia because not all doctors are trained to recognize this disorder. *See Stewart*, 2000 U.S. App. LEXIS 33214, at *8 (citation omitted); *see also Burroughs v. Massanari*, 156 F.Supp. 2d 1350, 1367 (N.D. Ga 2001 (acknowledging that a specialist in rheumatology is better qualified to diagnose fibromyalgia and determine its effects on an individual); 20 C.F. R. § 404.1527(d)(5) (stating that specialists' opinions on medical issues related to their area of specialty are generally given more weight).

reflexes. (Tr. 19, 421, 423, 682). The ALJ properly found that Dr. Clark's limitations were inconsistent with the evidence of record. (Tr. 19).

Dr. Rabinowitz's notes show that he was unable to test the Plaintiff's gait because of her dependence on assistance (holding on to objects in the room) and a quad cane when ambulating. Further, that "her range of motion testing was impossible to adequately perform because Plaintiff complained of significant pain with even minimal range of motion testing of the ankles, knees, hip, and shoulders." Significantly, there was no evidence of active joint inflammation, deformity, instability, or contracture. There was no evidence of paravertebral muscle spasm. Straight leg raising was negative bilaterally in the sitting position and postive bilaterally in the supine position. Grip strength was 4/5 in the left hand and could not be assessed in the right hand. Additionally, as noted above Dr. Rabinowitz found that Plaintiff was embellishing and magnifying her symptoms. (Tr., 19, 235, 236).

The ALJ also properly found that Dr. Rabinowitz's findings were based upon Plaintiff's subjective complaints instead of valid objective findings. (Tr. 19). The ALJ reviewed the medical evidence of record and found the opinions of Dr. Clark and Dr. Rabinowitz's were not supported by the medical evidence of record. (Tr. 19). Substantial evidence supports the ALJ's conclusion that Plaintiff is capable of a wide range of sedentary work.

**II.   DID COMMISSIONER ERR IN RELYING ON "VE" TESTIMONY THAT CONFLICTS WITH THE DICTIONARY OF OCCUPATIONAL TITLES[3]**

Plaintiff argues that the ALJ erred in relying on the vocational expert's ("VE") testimony that conflicted with the Dictionary of Occupational Titles because the only occupations listed require more than the ability to perform one to two step tasks.

Plaintiff's "RFC" was for a wide range of sedentary work with a sit/stand option; "[s]he can occasionally climb, balance, kneel, stoop, crouch, and crawl" and was precluded from exposure to hazards (Tr. 16 Finding 5). Plaintiff was limited to unskilled, low stress work defined as one to two step tasks, routine repetitive tasks, working primarily with things rather than people, and entry level positions (Tr. 16 Finding 5). Plaintiff's "RFC" precluded her from performing her past relevant work (Tr. 20 Finding 6); therefore, the burden of production shifted to the Commissioner.

To meet this burden, the Commissioner must show the existence of a significant number of other jobs in the national economy that the claimant is capable of performing, given her vocational profile and "RFC" *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir 1983). If an ALJ finds that a claimant

---

[3]   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

cannot perform a full range of work within a given exceptional level, "VE" testimony is the preferred method to determine whether the claimant's non-exceptional impairments further diminish her ability to work at that level 20 C.F.R. §§ 404.1561, 416.961; Social Security Ruling (SSR) 83-12; see also *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

To determine the extent to which these limitations erode the unskilled sedentary occupational base, the ALJ asked the "VE" whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. The "VE" testified that given all the factors the individual would be able to perform the requirements of representative occupations such as: surveillance systems monitor (DOT code 379.367-010: sedentary; SVP 2; 200 local jobs; 1,000 state jobs: 100,000 national jobs) and semi-conductor bonder (DOT code 726.685-0) and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. 404.1560 (c), 404.1566, 416.96(c), and 416.966) (Tr. 20).

The ALJ asked the "VE" whether an individual with Plaintiff's "RFC" and other vocational characteristics could perform her past relevant work or other work (Tr. 828-30). The "VE" testified that such an individual could not perform Plaintiff's past relevant work, but could perform other work, including the jobs of surveillance system monitor and semi-conductor bonder as listed above (Tr. 829). The "VE's" testimony was based upon a hypothetical question that fairly set out all of Plaintiff's limitations. The ALJ, therefore

properly relied on the "VE's testimony to find that Plaintiff could perform other work and was not disabled (Tr. 24). *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The documentary evidence and an analysis of Plaintiff's testimony supports the ALJ's "RFC" determination and his hypothetical question to the "VE" (Tr. 20 Finding 10, 828-30). Therefore, pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Thus, Plaintiff failed to prove that a material inconsistency actually existed between the "VE"'s testimony and the "DOT".

The ALJ applied the correct legal standards in evaluating Plaintiff's case, and substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

C.   **CONCLUSION**

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Therefore, based on the application for a period of disability and disability insurance benefits protectively filed on February 15, 2006, Plaintiff is not disabled under sections 216(I) and 223(d) of the Social Security Act.

Based on the application for Supplemental Security Income protectively filed on February 15, 2006, Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment dismissing this case and thereafter, to close the file.

**DONE AND ENTERED** in Chambers at Fort Myers, Florida, this 28th day of September, 2010.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Susan Roark Waldron, A.U.S.A.
Carol Avard, Esquire